UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DEBRA OTTINGER,

               Plaintiff,                             Hon. Ellen S. Carmody

v.

                                                 Case No. 1:18-cv-765

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/


## OPINION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.   The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.   Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff was disabled as of October 17, 2017, but not prior thereto.   For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.   Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

       The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.   *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).   The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 52 years of age on her alleged disability onset date. (PageID.238). She successfully completed high school and worked previously as a fast food services manager. (PageID.77). Plaintiff applied for benefits on June 23, 2015, alleging that she had been disabled since May 4, 2015, due to spondylolisthesis, fibromyalgia, diabetes, depression, osteoarthritis, bunions, carpal tunnel syndrome, and bursitis. (PageID.238-39, 264). Plaintiff's application was denied, after which she requested a hearing before an Administrative Law Judge (ALJ). (PageID.145-236).

On September 12, 2017, Plaintiff appeared before ALJ Michael Condon with testimony being offered by Plaintiff and a vocational expert. (PageID.85-143). In a written decision dated November 3, 2017, the ALJ determined that Plaintiff was disabled beginning October 17, 2017, but not prior thereto. (PageID.68-79). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.35-40). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1]  1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.    An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations

3

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) obesity; (2) status-post bariatric surgery; (3) degenerative disc disease of the cervical spine; (4) degenerative disc disease of the lumbar spine; (5) diabetes mellitus with neuropathy; and (6) adjustment disorder with mixed

---

No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

anxiety and depressed mood, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.71-72).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) she can occasionally balance, stoop, crouch, and climb ramps/stairs; (2) she cannot kneel, crawl, or climb ladders/ropes/scaffolds; (3) no exposure to vibration, extreme cold, or to hazards, including unprotected heights and dangerous moving machinery; (4) no ambulation over uneven terrain; (5) no operation of foot controls bilaterally; (6) she can perform simple routine work that involves making simple work-related decisions and tolerating occasional workplace changes; and (7) she can have occasional contact with the general public. (PageID.72).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there

exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 160,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.137-40). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). This evidence would justify denying Plaintiff's claim for benefits. The ALJ, however, also examined Plaintiff's claim by reference to the Medical Vocational Guidelines, also known as the "grids," which consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2.

Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. In other words, a claimant may be awarded benefits if she satisfies the requirements of one of the particular rules correlating to a finding of disability. *See, e.g., Branon v. Commissioner of Social Security*, 539 Fed. Appx. 675, 679 (6th Cir., Oct. 2, 2013).

With respect to age, the grids categorize a claimant limited to light work into one of three categories: (1) younger individual (age 49 and younger); (2) closely approaching advanced age (age 50-54); and (3) advanced age (age 55 and older). 20 C.F.R., Part 404, Subpart P,

Appendix 2, § 202.00.   As the ALJ recognized, given's Plaintiff's other characteristics, the grids

resulted in a finding of not-disabled so long as Plaintiff was characterized as closely approaching

advanced age.   (PageID.78).   The ALJ further recognized, however, that once Plaintiff attained

advanced age, the grids resulted in a finding of disabled.   Plaintiff, however, did not attain age 55

until December 18, 2017, six weeks *after* the date of the ALJ's decision.

Recognizing that a strict application of the age categories would result in the denial

of Plaintiff's disability claim, the ALJ characterized Plaintiff's circumstance as a "borderline age

situation" and placed Plaintiff in the advanced age category as of October 17, 2017, thereby finding

her disabled as of that date.   Accordingly, the only issue raised by Plaintiff's appeal is whether

substantial evidence supports the ALJ's decision that Plaintiff was not disabled between May 4,

2015, and October 16, 2017.

I.        **ALJ's Description of the Relevant Medical Evidence**

The ALJ discussed the medical evidence at great length.   Specifically, the ALJ

stated as follows:

> The claimant testified she could only lift two to three pounds. Her
> feet go numb if she sits too long, which she described as 20 minutes.
> She can stand for 15 to 20 minutes. On a good day she can walk 100
> feet, after that she stated she hurts all over. She shops for groceries
> using an electric cart. The claimant also testified to blurred vision
> and cold hands and feet with a pins and needles feeling in her
> extremities because of diabetes.
>
> A Function Report completed by the claimant's friend based on
> responses from the claimant indicates the claimant could not lift
> over 10 pounds and she had great pain if she had to push or twist.
> Difficultly climbing stairs was endorsed, and she leans on walls
> when walking. The claimant even stated she needed help getting out
> of bed. She sometimes required assistance to even wash and dry
> herself. Finally, she indicated her conditions caused her depression
> (Ex 11E).

Contrary to her reports, she stated she rarely if ever uses cane. In addition, she has refused insulin and her doctor commented that her refusal to do so despite his recommendation is not rational (Hearing Testimony). In spite of her complaints of neck pain, she displayed good range of motion of the neck during the hearing. It was not until she was asked to show how much rotation of the neck she had that she moved her whole body, stating she had to do so in order to move her head.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported.

The claimant underwent surgery on her lumbar spine years ago. She has endorsed experiencing pain and physical limitation since then. Neck pain was also reported. Because of her complaints, she received cervical and lumbar injections for pain (Ex 5F/6-7 and 29; 13F/20). A February 2015 MRI of the cervical spine showed mild degenerative changes at three levels. No compromise of the spinal cord or exiting nerve root was found (Ex 5F/9-I0). An MRI of the lumbar spine was also performed in February 2015. This showed only a grade I spondylolisthesis at a single level. Otherwise, the findings revealed no changes in the spine when compared to studies three years before (Ex 5F/11). Likewise, additional radiological studies of the lumbar spine from early 2017 identified only minor change in the spine (Ex 15F/27-30).

Despite a May 2015 discussion with an orthopedist about the possibility of another surgery on the lumbar spine, the claimant elected to proceed with conservative treatment only (Ex 5F/2). She started physical therapy shortly thereafter. However, contrary to the allegedly debilitating nature of her pain, she only attended one appointment with physical therapy before quitting this treatment (Ex 6F).

Moreover, a mid-2015 primary care note contained no significant physical examination findings and noted her gait was normal (Ex 4F/4). Subsequent primary care notes also showed her gait remained normal despite the alleged severity of her low back pain (Ex 11F/3 and 8; 15F/3 and 36). Interestingly, there was mention in the treatment notes that she was kayaking in the Muskegon River during the period of alleged disability (Ex 11F/5 and 15F/5).

The day after a functional capacity evaluation in February 2016, she presented to the emergency room (ER) complaining that she had overdone it the previous day. However, the only substantive finding was generalized tenderness of the spine. Otherwise, her physical examination was normal (Ex 16F/2-3). As with the other evidence of record, such findings do not support the degree of impairment endorsed by the claimant.

Incredibly, and entirely inconsistent with her subjective statement that she felt she had overdone it during the functional capacity evaluation, the supposedly objective test results indicated the claimant's maximum functioning was limited to moving her fingers and occasionally reaching overhead while standing. Aside from this, she seemed entirely incapable of performing any and all activity of any kind, including lifting, sitting, walking, other anything else for an appreciable period (Ex 10F/5). Clearly, such findings are outside even the claimant's admitted abilities at the hearing, although these are also inconsistent with the overall evidence that indicates she was much more capable than alleged.

The individual that performed the February 2016 evaluation also commented that the claimant displayed inconsistencies during the testing. Specially, the evaluator noted the claimant performed better in some areas than would have been expected based on her subjective statements and complaints. He cited to the claimant's observed ability to stand longer when testing her ability to lift than when her ability to stand was being tested specifically (Ex 10F/5). This suggests a lack of full cooperation with the testing.

Also contrary to the claimant's allegations, the evaluator observed the claimant leaving the clinic after testing. The claimant was unaware she was being observed. The record states, "She ambulated with a longer stride length, foot over foot, and a quicker pace than in the clinic." Considering the claimant apparently walked better outside of the clinic after testing and when not aware she was observed, the test results cannot be relied upon to support the claimant's subjective complaints.

This is not to say the claimant had no limitations whatsoever, particularly since other physical examinations contained some positive findings. Additionally, a podiatrist recorded decreased sensory in the bilateral lower extremities in May 2017. Nevertheless, the claimant continued to display a normal gait and did not require an assistive device for ambulation. She also had full

muscle strength and normal reflexes throughout the lower extremities (Ex 18F/3). The examination findings remained unchanged at later appointments (Ex 18F).

Although this evidence supports the claimant's reports of diabetic neuropathy in the lower extremities, it does not suggest her overall functioning was as limited as alleged, even when considered in combination with her other impairments. In addition, as recently as August 2017 the podiatrist stated, "[the claimant] is being noncompliant so far with treatment." (Ex 18F/10).

Therefore, the record showed the claimant had previous back surgery and the objective evidence supports functional limitations within the given residual functional capacity. However, the fact the claimant was not compliant with treatment, had observed inconsistencies during testing when she was allegedly providing full effort, had inconsistent objective findings on examinations, and had a normal gait routinely observed, the record does not support the level of functional impairment reported by the claimant.

Regarding her mental health, she sought treatment with a mental health professional in May 2015. She cited her reasons for seeking treatment were trying to cope with a daughter that was neglecting children, verbal abuse from her spouse, and pain in her neck and back. However, other than appearing depressed, her mental status examination was within normal limits (Ex 7F/2). Similarly, when she met with a psychological consultative examiner she reported some feelings of anger and sadness. Yet her mental status exam was unremarkable (Ex 9F).

(PageID.73-75).

## II.        The ALJ's RFC Finding is Supported by Substantial Evidence

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related

physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). As noted above, the ALJ concluded that Plaintiff could perform a limited range of light work which, until Plaintiff attained "advanced age," resulted in a finding that she was not disabled. Plaintiff argues that she is entitled to relief because the ALJ's RFC assessment is based upon a mischaracterization of certain items in the record.

A.     Plaintiff's Refusal to Take Insulin

At the administrative hearing, Plaintiff conceded that she refuses to take insulin despite being instructed to do so by one of her doctors. (PageID.107-08). Plaintiff justified her refusal by stating, "it's changed so much compared to what it used to be. . .[t]here's different education now and different ways of eating to monitor better." (PageID.107). According to Plaintiff, her doctor characterized her refusal to take insulin as irrational. (PageID.107). The record contains evidence that Plaintiff is not compliant with instructions to monitor her blood sugars and otherwise treat her diabetes. As one care provider stated following an August 8, 2017 examination, Plaintiff "is being noncompliant so far with treatment." (PageID.734).

Plaintiff does not dispute the accuracy of the ALJ's statement that "she has refused insulin and her doctor commented that her refusal to do so despite his recommendation is not rational." (PageID.73). Instead, Plaintiff argues that the ALJ nevertheless erred by articulating "an under-nuanced assessment of Plaintiff's declination of insulin." (ECF No. 11 at PageID.751). Plaintiff's argument is nothing more than an invitation for this Court to re-weigh the evidence. It is the ALJ, however, who is tasked with weighing the evidence and resolving the conflicts therein. Moreover, even if the Court assumes that the ALJ's assessment of this issue is insufficiently

nuanced, Plaintiff has failed to argue how such renders her more limited than recognized by the

ALJ's RFC finding.   This argument is, therefore, rejected.

> B.       Imaging Evidence

As noted above, in discussing the medical evidence the ALJ made specific

reference to the results of certain objective testing:

> A February 2015 MRI of the cervical spine showed mild
> degenerative changes at three levels. No compromise of the spinal
> cord or exiting nerve root was found (Ex 5F/9-I0). An MRI of the
> lumbar spine was also performed in February 2015. This showed
> only a grade I spondylolisthesis at a single level. Otherwise, the
> findings revealed no changes in the spine when compared to studies
> three years before (Ex 5F/11). Likewise, additional radiological
> studies of the lumbar spine from early 2017 identified only minor
> change in the spine (Ex 15F/27-30).

(PageID.73).

Plaintiff again argues that the ALJ erred by articulating "an under-nuanced

assessment" of this particular imaging evidence.   (ECF No. 11 at PageID.751).   Specifically,

Plaintiff argues that the results of the testing referenced in the aforementioned quotation, "is not

evidence of continued minor problems at a *single* level."   (ECF No. 11 at PageID.754).   Plaintiff,

however, has badly misconstrued the ALJ's statement, as the ALJ did not conclude that Plaintiff

experienced only "minor problems at a single level" of her spine.   Instead, the ALJ observed that

the results of imaging performed in 2017 revealed only minor changes as compared with previous

imaging.   (PageID.73).   A review of the evidence to which the ALJ cited supports this

conclusion.   (PageID.670-73).   Simply put, there is a significant distinction between stating that

a person suffers only a minor impairment and stating that a person's impairment has experienced

only minor changes.   Plaintiff's argument, in addition to improperly seeking this Court to re-

weigh the evidence, fails to recognize this distinction.   Accordingly, this argument is rejected.

C.      Occupational Therapist Carolyn Boersma

On February 10, 2016, Plaintiff participated in a Physical Work Performance Evaluation conducted by Occupational Therapist Carolyn Boersma. (PageID.562-68). The ALJ specifically referenced this examination in his opinion. Specifically, the ALJ observed:

> The day after a functional capacity evaluation in February 2016, she presented to the emergency room (ER) complaining that she had overdone it the previous day. However, the only substantive finding was generalized tenderness of the spine. Otherwise, her physical examination was normal (Ex 16F/2-3). As with the other evidence of record, such findings do not support the degree of impairment endorsed by the claimant.
>
> Incredibly, and entirely inconsistent with her subjective statement that she felt she had overdone it during the functional capacity evaluation, the supposedly objective test results indicated the claimant's maximum functioning was limited to moving her fingers and occasionally reaching overhead while standing. Aside from this, she seemed entirely incapable of performing any and all activity of any kind, including lifting, sitting, walking, other anything else for an appreciable period (Ex 10F/5). Clearly, such findings are outside even the claimant's admitted abilities at the hearing, although these are also inconsistent with the overall evidence that indicates she was much more capable than alleged.

(PageID.74).

Plaintiff has identified no error with the ALJ's description of Ms. Boersma's evaluation, but instead argues that the proper interpretation of such is "not resolved" and, therefore, the ALJ should have further developed the record by either contacting Ms. Boersma or ordering a consultive examination. An ALJ is not obligated to supplement the record with additional evidence unless the record as it then exists is insufficient to assess Plaintiff's residual functional capacity or otherwise resolve her claims. *See, e.g., Ferguson v. Commissioner of Social Security*, 628 F.3d 269, 275 (6th Cir. 2010) ("[t]he ALJ has discretion to determine whether additional evidence is necessary"). As is recognized, "how much evidence to gather is a subject on which

13

district courts must respect the Secretary's reasoned judgment." *Simpson v. Commissioner of Social Security*, 344 Fed. Appx. 181, 189 (6th Cir., Aug. 27, 2009). As the court further observed, to obligate the Commissioner to obtain an absolute "complete record" in each case "literally would be a formula for paralysis." *Ibid*. The record in this matter was more than sufficient to assess Plaintiff's RFC and her argument that the ALJ should have weighed the evidence differently does not compel a different conclusion. Accordingly, this argument is rejected.

> D. Drs. Eyke and Wilson

On May 14, 2015, Dr. J.C. Eyke stated that Plaintiff "is totally disabled." (PageID.478). The doctor reiterated this opinion on June 16, 2015, stating that Plaintiff is "totally disabled." (PageID.510). On October 22, 2015, Dr. Anthony Wilson stated that Plaintiff "is totally disabled." (PageID.722). Dr. Wilson further indicated, however, that Plaintiff would be able to return to work at some unspecified date in the future. (PageID.723). Neither doctor articulated any specific functional limitations for Plaintiff, instead simply concluding that Plaintiff was "totally disabled."

The ALJ, however, discerned a distinction between the opinions of Dr. Eyke and Dr. Wilson, namely that while both doctors stated that Plaintiff was "totally disabled," Dr. Wilson indicated that Plaintiff would nevertheless be able to return to work in the future. (PageID.75-76). Plaintiff argues that the ALJ erred by drawing a distinction between the two doctors' opinions. Plaintiff argues that both doctors simply found her totally and permanently disabled. Plaintiff argues that she is entitled to relief because the ALJ's recognition of "this non-existent conflict effected [his] decision." (ECF No. 11 at PageID.756-57).

Even if the Court assumes that the ALJ erred by discerning a distinction between the two doctors' opinions, Plaintiff has failed to articulate how such merits relief. The conclusory opinion that Plaintiff is "totally disabled" is entitled to no weight as such is a matter reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1). Moreover, Plaintiff has failed to indicate how the ALJ's alleged error calls into question his RFC assessment. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Dated: February 19, 2019                          _  /s/ Ellen S. Carmody_____
                                                  ELLEN S. CARMODY
                                                  U.S. Magistrate Judge